*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JILL MARIE STREUR,

        Plaintiff-Appellee,

UNPUBLISHED
March 17, 2022

v

No. 355971
Ottawa Circuit Court
LC No. 19-091247-DM

CHRISTOPHER STREUR,

        Defendant-Appellant.

Before: RIORDAN, P.J., and K. F. KELLY and SWARTZLE, JJ.

PER CURIAM.

In this dispute arising from a suit for divorce, defendant, Christopher Streur, appeals by right the trial court's decision to deny his motion for a directed verdict on the claim by plaintiff, Jill Marie Streur, that defendant committed the tort of malicious prosecution. He also maintains that the trial court erred when it trebled the damages arising from that tort. We conclude that the trial court did not err when it denied defendant's motion for a directed verdict. Moreover, because defendant did not preserve his second claim of error by raising it in the trial court, we decline to address it. Accordingly, we affirm.

## I. BASIC FACTS

The parties married in May 1994. They were both previously married, and they both had children from their previous relationships. They had a daughter, Brittney Streur, who was born in January 1995. They also adopted a then-approximately eight-year-old girl in July 2015.

The parties had difficulties in their marriage and argued over various things, such as finances, drinking, and marijuana. In 2018, they separated, but tried to reconcile. The reconciliation did not work and, in June 2019, plaintiff informed defendant that she wanted a divorce. The parties argued on the morning of June 27, 2019. Both parties called 911. Plaintiff stated that she did so after defendant took the keys to her car and refused to let her leave. Defendant called after plaintiff left and informed an officer that plaintiff had assaulted him.

Plaintiff sued for divorce in July 2019. After she was found not guilty of domestic assault, plaintiff amended her complaint to include claims of malicious prosecution and defamation. The

parties contested numerous matters involved in the divorce over nine days of a bench trial. The trial included testimony and evidence about the argument that occurred on June 27, 2019, plaintiff's arrest, and subsequent events.

In October 2020, the trial court entered an opinion and order. The trial court entered a corrected opinion and order in December 2020. The trial court resolved disputes over child custody and the parties' marital estate, which rulings are not in dispute on appeal. The trial court also found that defendant had fabricated the allegations of domestic assault against plaintiff, which amounted to malicious prosecution. The trial court found that plaintiff suffered $25,000 in damages. The trial court trebled the damages under MCL 600.2907. The trial court determined that plaintiff owed defendant $77,877.24 as an equalization payment on the assets from the marital estate, but offset that amount by the damages from the malicious prosecution and other amounts. The trial court ultimately determined that defendant had to pay plaintiff $20,456.11.

In January 2021, defendant appealed by right in this Court the trial court's opinion and order finding him liable for malicious prosecution and trebling the applicable damages.

## II. DIRECTED VERDICT

### A. STANDARD OF REVIEW

Defendant first argues that the trial court erred when it denied his motion for a directed verdict on plaintiff's claim of malicious prosecution. This Court reviews de novo a trial court's decision on a motion for a directed verdict. *Taylor v Kent Radiology, PC*, 286 Mich App 490, 499; 780 NW2d 900 (2009). This Court also reviews de novo whether the trial court properly applied the common law. See *Roberts v Salmi*, 308 Mich App 605, 612; 866 NW2d 460 (2014).

### B. ANALYSIS

A party may move for a directed verdict at the close of the opposing party's proofs. See MCR 2.516. A trial court should grant a motion for a directed verdict only when the evidence shows that there is no factual question on which reasonable minds could differ. See *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 303 Mich App 441, 446; 844 NW2d 727 (2013). If a reasonable finder of fact could honestly reach different conclusions, then the dispute must be resolved by the finder of fact. See *Taylor*, 286 Mich App at 500. In evaluating a trial court's decision on a motion for a directed verdict, this Court must evaluate the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. See *Aroma Wines*, 303 Mich App at 446.

In order to establish a claim for malicious prosecution, plaintiff had to prove that (1) defendant initiated a criminal prosecution against her, (2) the criminal proceedings terminated in her favor, (3) defendant lacked probable cause for his actions, and (4) defendant undertook his actions with malice or a purpose other than bringing plaintiff to justice. See *Matthews v Blue Cross and Blue Shield of Mich*, 456 Mich 365, 378; 572 NW2d 603 (1998).

On appeal, defendant asserts that plaintiff failed to establish that he lacked probable cause to bring a charge, but argues more specifically that, because the prosecutor brought the charges after an independent investigation, he cannot be said to have initiated the action. Defendant

suggests that when a prosecutor brings charges on the basis of information that was provided by a complainant and the information, if true, would amount to probable cause, then the complainant cannot be held liable for malicious prosecution even if the information provided was false.

Defendant correctly notes that it is a complete defense to a claim of malicious prosecution that the prosecutor exercised his or her independent discretion to initiate a prosecution. See *id*. at 384. But that defense does not apply if the complainant knowingly provided false information and the prosecutor relied on the false information. See *id*. at 385 (stating that the defense applies unless "the information furnished was known by the giver to be false and *was the information on which the prosecutor acted*"). This is especially so where the prosecutor relies solely on the word of an accuser, without there being an independent corroboration by any third party. See *Matthews*, 456 Mich at 384. As our Supreme Court long ago explained, it is not the policy of the law "to permit innocent men to be subjected to false charges and unfounded arrests." *Stanton v Hart*, 27 Mich 538, 542 (1873). Indeed, a person has no "right to set the criminal law in motion against another upon mere conjecture" and much less so if he or she is "aware that the accused was in fact guiltless." *Hamilton v Smith*, 39 Mich 222, 227 (1878). Accordingly, a person who fabricates claims against another can be liable in tort for initiating a criminal prosecution if the prosecutor relied on the false information in bringing charges against the plaintiff. *Matthews*, 456 Mich at 385.

Similarly, a person who provides false information to a prosecutor cannot rely on the fact that the prosecutor believed him or her to establish that he or she had probable cause. This is because a person cannot rely on the prosecutor's decision unless that person has fully and fairly stated the material facts. See *Modla v Miller*, 344 Mich 21, 22; 73 NW2d 220 (1955) (stating that a defendant has established probable cause as a matter of law when the undisputed evidence showed that he or she in good faith fully and fairly stated all the material facts to the prosecutor and signed the complaint on the prosecutor's advice); *Christy v Rice*, 152 Mich 563, 566; 116 NW 200 (1908) (stating that the defendant had the right to assume that the prosecutor was acting on his own independent judgment *if* the defendant believed that his own statements were true). A person who has fabricated claims against another has not fully and fairly stated the material facts. See *Ringo v Richardson*, 88 Mich App 684, 691; 278 NW2d 717 (1979) ("[A] defendant may not escape liability . . . if he gave false information . . . ."); *Clanan v Nushzno*, 261 Mich 423, 429; 246 NW 168 (1933) (holding that, given the evidence of the parties' prior practices, there was a question of fact as to whether the defendant withheld material information from the prosecutor; as such, whether the defendant had probable cause to initiate the charge was for the jury to determine). Consequently, if plaintiff presented evidence from which a reasonable finder of fact could find that defendant fabricated the charges against her and that the prosecutor relied on the fabricated claims, then the trial court properly denied defendant's motion for a directed verdict.

At trial, plaintiff presented evidence that she and defendant argued on the morning of June 27, 2019, after he returned from work and saw that she was packing to leave. Plaintiff stated that defendant had in the past taken her keys to prevent her from leaving and that she had on those occasions called 911, after which defendant would return her keys. She testified that defendant took her car keys that morning, dangled them in front of her, and only returned her keys after she called 911. She stated that she then left without incident only to learn later that defendant called the police and claimed that she had assaulted him. She testified that she told the officer that there had been no assault. She also presented evidence that contradicted defendant's claim that the

incident arose when he looked for the keys to the truck. More specifically, she testified that the keys to the truck were not at the house during the incident.

Brittney also testified at trial and stated that defendant told her that plaintiff assaulted him. He claimed that plaintiff's assault was the cause of a particular scratch. Brittney told the trial court that she was present when defendant suffered the injury that he identified and that the scratch was caused by a screw that was sticking out of the playhouse that he was building in the backyard of the marital home. She testified that she confronted him about the source of the scratch and stated that defendant got defensive and angry. She also said that the scratch had scabbed over, yet the picture presented at trial showed a fresh cut. Brittney also testified about a subsequent incident when defendant became angry, aggressive, and confrontational; during that incident, she related, defendant begged her to hit him.

Finally, plaintiff presented evidence that defendant was petty and vindictive and would take extreme steps to get revenge on persons who had angered him. Indeed, there was testimony that defendant called the police department and reported plaintiff's adult son, Timothy Storey, for a robbery that he supposedly committed 10 years earlier. Although defendant presumably had the necessary information to have reported the alleged crime earlier, he did not report it until after he had a falling out with Timothy over the divorce. Britney also testified that defendant admitted to having called children's protective services in an attempt to make it so Timothy could not see his children.

Examining the totality of the evidence, plaintiff established the elements of her claim of malicious prosecution. A finder of fact could infer from plaintiff's testimony that defendant was the aggressor and that, consistent with his past schemes, defendant had taken plaintiff's car keys—not the keys to the truck—in an attempt to prevent her from leaving. It could further find that defendant dangled the keys in front of plaintiff to taunt her and only returned her car keys when she called 911. The finder of fact could then conclude that plaintiff left the home without incident after she recovered her car keys. From that, the finder of fact could find that plaintiff did not assault defendant and that he knew that she was guiltless. The finder of fact could further infer that defendant fabricated the story about the keys to the truck to present his role in events in a more favorable light. From the totality of those circumstances, the finder of fact could then determine that plaintiff did not scratch or otherwise injure defendant. Accordingly, the finder of fact could find that defendant lied when he called 911 and reported that plaintiff had assaulted him, lied when he told the responding officer about the assault and scratch, and lied at plaintiff's trial.

Brittney's testimony bolstered the evidence that defendant lied about the domestic violence. Brittney testified that defendant claimed that he suffered a scratch during the assault, but she knew that he suffered the injury that he identified as having been caused by plaintiff as one that he sustained while working on the play structure some time before June 27, 2019. Brittney's testimony that defendant became defensive and angry when she confronted him about that fact permitted an inference that defendant was conscious that he had lied about the source of his injury. The finder of fact could determine that defendant lied about the injury to elevate the seriousness of his allegations and make it more likely that the responding officers and prosecutor would act against plaintiff—that is, the finder of fact could find that defendant deliberately used lies to set the criminal process in motion against plaintiff. That is precisely the type of harm that the tort of malicious prosecution was intended to remedy. See *Hamilton*, 39 Mich at 226-227. Moreover, if

such facts were found, as our Supreme Court once observed, it would also satisfy the malice element: "And in the present case, supposing it to be found that the prosecution was without probable cause and that the purpose in prosecuting was to trump up or extort something for the defense in the action for divorce, rather than to uphold and honestly and in good faith enforce the criminal law, then the prosecution was malicious." *Id*. at 229.

Taken together, the evidence was sufficient to establish a question of fact as to whether defendant lied to the prosecutor when he claimed that plaintiff assaulted him. There were no other witnesses to the events at issue, so there was no evidence other than defendant's statements to support the contention that plaintiff assaulted defendant and that plaintiff was the source of his injury. Because there was no other evidence, the prosecutor necessarily relied on the information provided by defendant when determining whether to bring charges against plaintiff. Consequently, there was evidence from which the finder of fact could find that defendant initiated the charges and that he lacked probable cause to do so because the claims were fabricated. See *Matthews*, 456 Mich at 385. The same evidence supported a finding that he acted maliciously, see *Hamilton*, 39 Mich at 229, and it was undisputed that the prosecution ended in plaintiff's favor. As such, there was evidence to support every element of malicious prosecution. See *Matthews*, 456 Mich at 378.

Accordingly, the trial court did not err when it denied defendant's motion for a directed verdict. See *Taylor*, 286 Mich App at 500.

## III. TREBLE DAMAGES

Defendant next argues that the trial court erred when it relied on MCL 600.2907 to treble the damages from the malicious prosecution. Defendant did not, however, properly raise this issue in the trial court. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). In a civil case, the failure to raise an issue before the trial court amounts to a waiver of that issue. See *Walters v Nadell*, 481 Mich 377, 387-388; 751 NW2d 431 (2008). Although this Court has the discretion to review unpreserved claims of error in a civil case, our Supreme Court has cautioned that appellate courts should exercise that discretion sparingly and then only to prevent a miscarriage of justice. See *Napier v Jacobs*, 429 Mich 222, 233; 414 NW2d 862 (1987).

In *Napier*, our Supreme Court declined to exercise its discretion to review the sufficiency of the evidence in support of a civil verdict for the first time on appeal—even though the claimed error may have resulted in an improper money judgment—because the loss of a favorable jury verdict did not amount to a miscarriage of justice that would warrant overlooking preservation requirements. *Id*. at 233-234. The same is true here. Defendant has not established that the failure to review this unpreserved claim of error would amount to a miscarriage of justice. Consequently, we decline to address this claim of error.

## IV. CONCLUSION

The trial court did not err when it denied defendant's motion for a directed verdict, and because defendant did not preserve his second claim of error by raising it in the trial court, we decline to address that claim. We affirm.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Brock A. Swartzle